1
2
3
4
5
6

## IN THE UNITED STATES DISTRICT COURT

7

## FOR THE DISTRICT OF ARIZONA

8

9  Melissa Gallegos,                              No. CV-25-00062-TUC-JGZ (JEM)

10          Plaintiff,                            **REPORT AND RECOMMENDATION**

11  v.

12  Commissioner    of    Social    Security
    Administration,
13
14          Defendant.

15          Plaintiff Melissa Gallegos ("Gallegos") seeks judicial review of a final decision by

16  the Commissioner of the Social Security Administration ("Commissioner").[1] (Doc. 1.) The

17  matter, on referral to the undersigned United States Magistrate Judge for Report and

18  Recommendation, is ripe for determination. (Doc. 13, 16, 18, 20.) As more fully set forth

19  below, the undersigned recommends that the district court reverse the ALJ's decision and

20  remand for further administrative proceedings.

21

22

23  …

24

25  …

26

27  _____

[1] On May 7, 2025, Frank Bisignano was sworn in as the Commissioner of the Social
28  Security Administration. Pursuant to Rule 25(d), Fed. R. Civ. P., Mr. Bisignano should be
    substituted as Defendant in this action.

# BACKGROUND

## Procedural History

On April 29, 2022, Gallegos filed a Title II application for disability benefits under the Social Security Act alleging disability beginning March 30, 2020. (Administrative Record "AR" 172-178.) Gallegos's application was denied initially on October 17, 2022, and on reconsideration on June 13, 2023. (AR 65-77 (disability determination explanation at the initial level), 79-87 (disability determination explanation at the reconsideration level).)

On February 8, 2024, Gallegos appeared with counsel and testified at a telephonic administrative hearing before Administrative Law Judge ("ALJ") Laura Speck Havens. (AR 30-64.) On April 8, 2024, the ALJ issued her non-disability decision. (AR 15-24.) On December 31, 2024, the Appeals Council denied Gallegos's request for review of the ALJ's non-disability decision thus making the ALJ's decision the final decision of the Commissioner. (AR 1-6.)

Gallegos timely filed the instant action seeking review of the Commissioner's decision. (Doc. 1.) The district court has jurisdiction pursuant to 42 U.S.C. § 405(b).

## The ALJ's Decision

The ALJ found that Gallegos met the insured status requirements of the Social Security Act on September 30, 2022. (AR 18.) The ALJ found that Gallegos had not engaged in substantial gainful activity between the alleged onset date and the date last insured. (AR 18.)

The ALJ determined that Gallegos suffers from the severe impairments of

intracranial hypertension and pseudotumor cerebri. (AR 18.) The ALJ determined Gallegos does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 19.) The ALJ determined Gallegos has the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR § 404.1527(b) except that [Gallegos] can occasionally climb, stoop, kneel, crouch, and crawl.

(AR 19-20.)

The ALJ determined that Gallegos is unable to perform any of her past relevant work. (AR 22.) The ALJ found that transferability of job skills is not an issue because using the Medical-Vocational Rules as a framework supports finding Gallegos "not disabled" whether she holds transferable skills or not. (AR 22-23.) Considering Gallegos's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that he can perform. (AR 23.) Thus, at step five, the ALJ found that Gallegos has not been under a disability from her alleged onset date through her last date insured. (AR 24.)

**ISSUES ON REVIEW**

Gallegos raises two issues for review. (Doc. 16 at p. 2.) First, she argues that the ALJ failed to provide clear and convincing reasons for her determination that Gallegos's statements concerning the intensity, persistence, and limiting effects of her symptom testimony is not fully persuasive. *Id.* at pp. 6-11. Second, she argues that the ALJ erred by failing to adequately articulate the supportability and consistency factors in analyzing

1  Chelsea Johnson, M.D's, opinion. *Id*. at pp. 11-13. The Commissioner argues against both

2  Gallegos's claims of error. (Doc. 18.) As more fully explained below, this Court agrees

3  with Gallegos on her first claim of error[2] and remand to the Commissioner is

4

5  recommended.

6  **Relevant Factual Background**

7  Gallegos was born in 1975 and is a younger individual in the eyes of the Social

8

9  Security Administration as of her date last insured. (AR 22.) She holds an associate's

10  degree. (AR 199.) She has unskilled past relevant work as a landscaper, a heavy job

11  performed at the medium exertion level. (AR 22.)

12

13  On March 24, 2019, Banner University Medical Center Emergency Department

14  paperwork records Gallegos as reporting that she was experiencing dizziness and

15  generalized weakness. (AR 354.) She is recorded as complaining of feeling the room spin,

16

17  numbness, nausea and vomiting, and urinary incontinence. *Id*. The medical record for this

18  emergency department visit records, *inter alia*, "We administered 12.5 of [M]eclizine here

19  and her symptoms improved markedly." (AR 356.)

20

21  On March 29, 2019, Gallegos presented to the Internal Medicine Department at

22

23  _____

24  [2] Agreeing with Gallegos on her first claim of error, this Court does not reach Gallegos's second claim of error. *See Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153

25  n.7 (C.D. Cal. 2008) (determining that "th[e] [c]ourt need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted,

26  and all of which can be addressed on remand"); *Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017) (dispensing of exhaustive analysis of plaintiff's remaining issues

27  because "[t]he ALJ's . . . evaluations of [p]laintiff's [testimony] . . . are inescapably linked

28  to conclusions regarding the medical evidence").

Banner University Medical Center South Campus and is recorded as reporting that she is experiencing the same symptoms. (AR 357.) Emilio Perez Power, M.D., recorded as follows, "Patient . . . presents to the clinic after having an episode of dizziness with room spinning sensation which caused her to go to the ED. Patient continues to have these symptoms, did not tolerate Meclizine given in ED. Is now here to follow up." *Id*. Dr. Power assessed Gallegos as presenting with "BPV[3] based of (*sic*) clinical history." *Id*.

At a June 19, 2019, Banner University Medical Center South Campus Neurology visit, Vimala Sravanthi Vajjala, M.D., assessed Gallegos with benign paroxysmal positional vertigo. (AR 369-371.) On June 8, 2020, Gallegos underwent an MRI. (AR 299-300.) Lidia Mayumi Nagae, M.D., recorded as follows:

> INDICATION: Transient ischemic attacks transient vision loss, vertigo.
> . . .
> IMPRESSION: 1. No acute intracranial abnormality. 2. There is prominence of the sella turnica with diffusely small size of the pituitary gland. While this may be present normal anatomic variation in the appropriate clinical setting, these may be related to headaches. There is narrowing of the dural venous sinuses are not bilateral transverse/sigmoid junctions. These findings may be seen in intrahepatic intracranial hypertension. Clinical correlation is advised.

(AR 299.)

On September 9, 2021,[4] Gallegos had a neurological follow-up with Bruce Coull, M.D. (AR 315.) Dr. Coull assessed, *inter alia*, "[t]his has been difficult to diagnose but I

---

[3] Benign paroxysmal vertigo.

[4] It is likely that the gap in Gallegos's medical treatment was a result of the COVID-19 pandemic declared by the World Health Organization in March 2020. *See* https://www.nm.org/healthbeat/medical-advances/new-therapies-and-drug-trials/covid-19-pandemic-timeline#:~:text=They%20named%20the%20virus%20%22severe,health%20emergency%20of%20international%20concern (last visited September 24, 2025).

- 5 -

suspect that the patient does have 'benign intracranial hypertension'." (AR 317.) Dr. Coull

recorded that "Pt has a Hx of nephrolithiasis so topiramate is off the table for her Rx." *Id.*

At a November 2, 2021, appointment, Dr. Coull recorded that Gallegos's visual

disturbances are "presumed" stem from her benign intracranial hypertension. (AR 313-

314.) This clinical note records that a lumbar puncture done on September 9, 2021, helped

relieve symptoms of blurred vision for a time but that Gallegos still felt unbalanced and

"woozy." (AR 313.) This note further states that an "evaluation by ophthalmology on

Aug[ust] 11, 2021 [. . .] found [her] to have bilateral optic disc edema but with normal

visual fields and normal VA for far at 20/20 and correctable near at 20/25." *Id.*  Dr. Coull

recorded, *inter alia*, "We discussed optic nerve fenestration and/or a lumbar drain. I will

discuss with ophthalmology." (AR 314.)

At a May 27, 2022, visit to the Center for Neurosciences Gallegos is recorded as

having lost significant weight with a recorded BMI[5] of 31.7. (AR 341-342.) Gallegos is

recorded as explaining at this visit that she experiences vision changes and gagging and

vomiting without nausea multiple times per day. (AR 341.) A June 27, 2022, diagnostic

lumbar puncture performed by Richard Chase, M.D., showed an opening pressure of 22

cm. (AR 337.)

At an August 30, 2022, visit to the Center for Neurosciences, Gallegos is recorded

as complaining of feeling dizzy and that she "has the ocean underneath her feet." (AR 331.)

A. Michael Badruddoja, M.D., records that Gallegos's benign intracranial hypertension has

---

[5] Body mass index.

improved with weight loss and any gait disturbance could be attributed to underlying

diabetic neuropathy. (AR 333.)

<u>Opinions of Chelsea Johnson, M.D.</u>

On October 25, 2023, treating provider Chelsea Johnson, M.D, opined as follows:

> This patient is currently under my care. She carries current diagnoses of idiopathic intracranial hypertension, migraines, history of DVT, pre-diabetes, chronic nausea and gagging. He current conditions make it difficult to maintain full time employment. She has regular doctor's visits at least several times/month, sometimes weekly. She requires being on medications that have caused significant side effects limiting her ability to focus and carry out tasks during the day. She experiences flares of her diagnoses which would require being off work at least once per week. She could at best be considered for part time employment[] but would be limited in her ability to work a full time job. Please consider this information in regards to her case. For additional information, please contact our office.

(AR 969.) At the administrative hearing, the ALJ directed Gallegos's counsel to obtain

another treating source opinion from Dr. Johnson that would give the ALJ "some idea of

how long" Gallegos's medical problems have been occurring. (AR 60.) Counsel agree to

try to obtain an updated opinion. (AR 60-61.) On February 9, 2024, Dr. Johnson opined as

follows:

> This patient is currently under my care. She carries current diagnoses of idiopathic intracranial hypertension, migraines, history of DVT, pre-diabetes, chronic nausea and gagging. He current conditions make it difficult to maintain full time employment. She has regular doctor's visits at least several times/month, sometimes weekly. She requires being on medications that have caused significant side effects limiting her ability to focus and carry out tasks during the day. She experiences flares of her diagnoses which would require being off work at least once per week. She could at best be considered for part time employment[] but would be limited in her ability to work a full time job. The above stated limitations have been present since at least 11/02/2021with Dr. Coull. Please consider this information in regards to her case. For additional information, please contact our office.

- 7 -

(AR 990.)

Gallegos's Hearing Testimony

Gallegos testified that the medications she was prescribed are the only medication that are available to treat her intracranial hypertension, and they caused her to suffer side effects such as gagging, vomiting, malaise, and pain. (AR 50-53.) She testified that her doctors, while acknowledging that her medications were difficult to tolerate, advised her that without medication the pressure around her optic nerves could increase to the point that she would become blind. (AR 48-51, 55.) She testified to suffering debilitating headaches that occurred for several hours at a time, several times per week. (AR 46-47.) She also testified that she suffers disabling headaches once per week or at least once every ten days. (AR 54-55.) She also testified to having fatigue that affects her ability to lift, walk, and sit up. (AR 40-41, 46.)

Other Statements By Gallegos

In an exertion questionnaire Gallegos described vomiting multiple times per day, dizziness, headaches, and eye pain. (AR 216.) She explained that she would get leg cramps at night if she overdid walking and that she could climb no more than one flight of stairs before fatigue and dizziness would set in. (AR 216-217.) She stated that she could carry some bags of groceries but that she could not carry a case of bottled water. (AR 217.) She fatigues easily and feels "like the ground under [her] moves" when she tries to do chores. (AR 218.)

…

…

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEGAL STANDARDS**

**<u>Five-Step Sequential Evaluation Process</u>**

The Commissioner employs a five-step sequential process to evaluate claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing: (1) s/he is not working; (2) s/he has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the RFC precludes the performance of past work. 20 C.F.R. § 404.1520(a)(4). At step five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, the ALJ does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033,

1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve

conflicts in the evidence, and if the evidence can support either outcome, the court may not

substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson*

*v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed

simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143

F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.

1989)). Reviewing courts must consider the evidence that supports as well as detracts from

the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

A claimant is "disabled" for the purpose of receiving benefits if she is unable to

engage in any substantial gainful activity due to an impairment which has lasted, or is

expected to last, for a continuous period of at least twelve months. 42 U.S.C. §

423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a

prima facie case of disability." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert.*

*denied*, 517 U.S. 1122 (1996); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).

**Symptom Testimony Legal Standard**

The ALJ is required to undertake a two-step analysis to evaluate a claimant's

subjective symptom testimony. *Devery v. Comm'r of Soc. Sec.*, No. CV-24-00025-TUC-

AMM (EJM), 2025 WL 647337, at *19 (D. Ariz. Feb. 19, 2025), *report and*

*recommendation adopted sub nom. Devery v. Comm'r of Soc. Sec. Admin.*, No. CV-24-

00025-TUC-AMM, 2025 WL 661887 (D. Ariz. Feb. 28, 2025) (citing *Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). "A claimant who alleges disability based

on subjective symptoms 'must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged[.]' " *Devery*, 2025 WL 647337, at *19 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

"[A] claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Devery*, 2025 WL 647337, at *19 (quoting *Smolen*, 80 F.3d at 1282 (citations omitted)); *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.' " *Devery*, 2025 WL 647337, at *19 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)).

"[I]f the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.' " *Devery*, 2025 WL 647337, at *19 (quoting *Lingenfelter*, 504 F.3d at 1036); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (rejecting the contention that the "clear and convincing" requirement had been excised by prior Ninth Circuit case law). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.' " *Devery*, 2025 WL 647337, at *19 (quoting *Garrison*, 759 F.3d at 1015).

## ANALYSIS

### Evaluation of Gallegos's Symptom Testimony

The ALJ acknowledged the two-step process for evaluating Gallegos's symptom

testimony. (AR 20.) The ALJ concluded that the record does not support the extent of the

Gallegos's allegations reasoning:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the record does not show the level of symptoms or limitations alleged. The record does not show any significant gait problems, imbalance, or lasting weakness to support her allegations that she cannot stand or walk for long. Although the claimant reported dizziness, the record does not show objective evidence of if (*sic*) affecting her ability to stand or walk. The record also shows no evidence of limitations sitting (*sic*) to support her claim that she can sit for only one hour at a time. The record also does not support the claimant's allegations regarding the frequency of her headaches. For a brief period she reported increased headaches, but later reported they were occurring only once per week. The record also showed objective evidence of the severity of her headaches such as observed photophobia or phonophobia.

(AR 21.)

Alleged Failure to Treat Headaches

Gallegos argues the ALJ erred in finding that the record does not support her

allegations regarding the frequency of her headaches. (Doc. 16 at p. 10.) Gallegos relies on

the ALJ's statement in her non-disability decision that "[i]n 2023, [Gallegos] reported

increased headaches but declined to attempt any medication for headaches." (AR 21.)

Gallegos urges that the record establishes that she declined the specific modality of

recommended treatment because she did not want to "become dependent on potentially

harmful treatment." (Doc. 16 at p. 10.) Gallegos points out that she testified to treating her

headaches by taking over-the-counter medication, "going into a dark room, putting a warm

washcloth over her head, and sleeping." *Id.*

The Commissioner urges that the ALJ may properly consider the effectiveness,

frequency, or extent of treatment when evaluating a claimant's allegations. (Doc. 18 at p.

6.) The Commissioner asserts that the ALJ properly considered evidence in the record in reaching the finding that Gallegos "declined to attempt any medication for headaches." *Id.*

It is true, as the Commissioner urges, that an ALJ may consider the effectiveness, frequency, or extent of treatment when evaluating a claimant's allegations. 20 C.F.R. 404.1529(c)(2); SSR 16-3p, 2017 WL 5180304, at *8. Here, the ALJ relied upon one medical record in support of her finding that "[i]n 2023, [Gallegos] reported increased headaches but declined to attempt any medication for headaches. (AR 21, citing 12F p. 1.)[.]" The medical record the ALJ relied on is an office note dated February 17, 2023, from Gallegos's primary care visit with Dr. Johnson. (AR 544.) The purpose of Gallegos's February 17, 2023, visit is noted as "f/u on labs." *Id.* The patient history portion of this record states, *inter alia*,

> HA:
> - getting more frequent headaches
> - doesn't like to take medication so didn't take anything fo (*sic*) it
> - neurologist wants her to take 'something really strong- Excedrin migraine',
> tries not to take anything for it

*Id.*

This Court finds that the ALJ's reliance on one primary care office visit note to support a finding that Gallegos "declined to attempt any medication for headaches" is not substantial evidence. First, the single medical record relied upon does not read that Gallego "declined to attempt any medication for headaches." Rather, as laid out above, the medical record states that Gallegos "tries not to take" medication for her headaches, not that she "declined to attempt any medication for her headaches."

Gallegos testified:

Q. How often were you getting migraine headaches during that time period?

A. Probably four to five times a week.

Q. And, how long would they generally last?

A. Anywhere from an hour to three hours.

Q. And, I didn't see any medications for that. Were you taking medication for your migraines?

A. I really don't like to take pain medication, so I try not to. What I would do is, go into a dark room and when that didn't work, I would get a warm washcloth and put it on my head and just try to relax and try to fall asleep and try to do other things. When all else failed, I would take a Tylenol or an Advil, but I would try really hard not to take any kind of medication, because from what my doctors tell me, this is going to be a really long-term problem and I don't want to be dependent on pain medication.

(AR 46-47.) Gallegos's testimony is that she tried not to take medication for her migraines but that "[w]hen all else failed," she would take Tylenol or Advil. Thus, Gallegos testified to taking medication for her migraines albeit "when all else failed."

The Commissioner relies upon an additional medical record in its brief for the argument that the ALJ's finding that Gallegos declined to attempt any medication for headaches is sufficiently supported. (Doc. 18 at p. 7.) This medical record is of a follow up visit on December 9, 2022, with provider Marie Christine Glisson, P.A. (AR 670-672.) P.A. Glisson recorded, *inter alia*, "I would like her to try over the counter Excedrin Migraine first to see if this helps. She is very resistant to taking medication." (AR 672.)

The ALJ did not rely upon this medical record in issuing her non-disability determination. (AR 20-21.) The district court may not "affirm the ALJ on a ground upon which [s]he did not rely." *Lannon v. Comm'r of Soc. Sec. Admin.*, 234 F. Supp. 3d 951, 954

(D. Ariz. 2017) (citing *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). The district court's review is limited solely to "the reasons provided by the ALJ in the disability determination[.]" *Id*. This Court declines to recommend that the district court affirm the ALJ's decision for on reasons not provided by the ALJ. *Lannon, supra*; *Orn, supra*. Regardless, this medical record relied upon by the Commissioner does not support the ALJ's finding that Gallegos "declined to attempt any medication for headaches." Rather, a fair reading of this medical record corroborates Gallegos's testimony that she tries not to take medication.

The Commissioner also relies on two medical records for the argument that Gallegos's headache frequency is reduced. (Doc. 18 at p. 7.) The Commissioner relies on a November 6, 2023, visit to Fahad Jabbar Laghari, M.D., where Gallegos's headache frequency is recorded as improving from three to four a week to one a week. (AR 894-899.) The Commissioner also relies on a December 28, 2023, visit to Damian Esteban Berezovsky, M.D., wherein it is recorded that Gallegos's headache frequency is noted as "occasional." (AR 975-977.)

Because the ALJ did not rely on these medical records in issuing her non-disability determination this Court will not consider them in issuing its recommendation to the district court. Nonetheless, these two records were created after Gallegos's date last insured of September 30, 2022, and are thus of limited relevance. *See e.g., Shubert v. Astrue*, No. 05-35790, 2007 WL 2819290, *1 (9th Cir. 2007) (finding a report authored nearly two years after the claimant's date last insured irrelevant to the issue whether claimant was disabled before the date last insured). Furthermore, vocational expert ("VE") Victoria Rei ("Rei")

testified that even suffering one headache a week as Gallegos endorsed would "eliminate jobs." (AR 54-55, 62.) Thus, these two records do not persuade this Court to find that the ALJ's determination that Gallegos's failure to treat her headaches is a clear and convincing reason that it is supported by substantial evidence.

In sum, this Court finds that the ALJ misinterpreted the single medical record that she relied upon in reaching her finding that Gallegos "declined to attempt any medication for headaches." Accordingly, this Court finds that this reason is not a clear and convincing reason supported by substantial evidence and it does not support the ALJ's reduced credibility determination.

Lack of Objective Record Support

Gallegos also argues that the ALJ erred in relying on a lack of objective medical evidence in support of her reduced credibility determination. (Doc. 16 at pp. 8-10.) As mentioned above, the ALJ determined that "[t]he record does not support the claimant's allegations regarding the . . . severity of her headaches"; "the record does not show the level of symptoms . . . alleged"; and "the record does not show objective evidence of [dizziness] affecting her ability to stand or walk." (AR 21.)

SSR 16-3p provides that once a medically determinable impairment is shown by objective medical evidence, the agency:

> . . . will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled. . . . We will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.

SSR 16-3p. The United States Court of Appeals for the Ninth Circuit has held that "once a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). An ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. Colvin*, 95 F.4th 1194, 1200 (9th Cir. 2024).

A lack of objective medical findings alone is not a sufficient basis to support an adverse credibility determination. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony); *Dschaak v. Astrue*, No. CV-10-1010-PK, 2011 WL 4498835, at *1 (D. Or. Sept. 27, 2011) (holding that "once the[ ] other bases for the ALJ's decision were discarded as erroneous, the ALJ's [adverse subjective testimony] determination could not rely solely on conflicts with the medical evidence").

As explained above, this Court finds that the other reason relied upon by the ALJ for discounting Gallegos's symptom testimony—the alleged failure to "attempt any medication for headaches"—is not specific, clear and convincing reason. *See* pp. 11-16, *supra*. Accordingly, a lack of objective medical support, now standing alone, is not a specific, clear and convincing reason for rejecting Gallegos's symptom testimony.

Additionally, this Court finds that the ALJ found in conclusory fashion that there is insufficient objective evidence fully corroborating Gallegos's symptom testimony. For

example, the ALJ mentioned that Gallegos "reported increased headaches, but later reported they were occurring only once per week." (AR 21.) Evidence of improvement does not automatically negate a claimant's claimed symptoms or functional limitations. *Singer v. Comm'r of Soc. Sec. Admin*, No. CV-18-01767-PHX-JJT, 2019 WL 9089997, at *3 (citing *Moore v. Comm'r, Soc. Sec. Admin.*, 278 F.3d 920, 924-25 (9th Cir. 2002)). Here, the ALJ failed to link her finding of reduced headache frequency to any of Gallegos's specific symptom testimony concerning her headaches and, instead, discredited Gallegos's testimony because her headache frequency reduced. Gallegos testified to disabling headaches at a rate of once per week or once every ten days, a rate that VE Rei testified would preclude substantial gainful employment. (AR 54-55, 62.)

The ALJ also found that the record does not show any significant gait problems, imbalance, or lasting weakness to support Gallegos's allegation that she cannot stand or walk for long. (AR 21.) The ALJ appears to support this finding by relying on a record of an examination that "showed normal gait, normal balance, and normal strength in all areas." (AR 21, citing 5F pp. 2, 3.) The Commissioner's defends the ALJ's finding by referencing medical records that that ALJ neither mentioned nor evaluated in her decision. (Doc. 18 at p. 5.)

Although the ALJ is the arbiter of the evidence, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008), the ALJ is required explain her determination that normal findings contained in the record support her reduced credibility determination. Here, the ALJ failed to provide any such explanation. This is error. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (finding that even when "facially legitimate reasons"

support an adverse determination, "complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy"); *Apodaca v. Comm'r of Soc. Sec. Admin.*, No. CV-18-04086-PHX-SPL, 2020 WL 1236298, at *3 (D. Ariz. Mar. 13, 2020) (finding that "although certain treatment notes described [p]laintiff as presenting with normal strength, tone, and gait, the ALJ has not explained how such findings are inconsistent with [p]laintiff's subjective symptoms."); *Thomas v. Comm'r of Soc. Sec. Admin.*, No. CV-18-04230-PHX-JZB, 2020 WL 1000023, at *7 (D. Ariz. Mar. 2, 2020) (recognizing that "the ALJ states that a number of medical records 'showed mostly normal gait, strength, tone, and range of motion without tenderness swelling or deformity.' But these findings are not mutually exclusive with debilitating pain . . ."); *Valenzuela v. Comm'r of Soc. Sec.*, No. CV-17-00406-PHX-MHB, Order, Doc. 21 at 6-7 (D. Ariz. Sept. 20, 2018) (rejecting ALJ's reliance upon "physical examination indicating normal muscle bulk and tone, and normal range of motion," holding "the ALJ's general recital of medical evidence with various citations to one-time examinations, and without specific reference to the limitations [p]laintiff testified to at the hearing fails to provide a clear and convincing reason for rejecting [p]laintiff's credibility," citing *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001), *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

This Court reaches the same conclusion regarding the ALJ's discounting of Gallegos's symptom testimony concerning her fatigue and ability to walk. (AR 21.) For example, in Gallegos's exertion questionnaire she reported, *inter alia*, "I get tired too easily now. I also get dizzy, well not dizzy but I feel like the ground under me moves." (AR 218.) Although the ALJ found that "the record does not show objective evidence of [dizziness]

affecting her ability to stand or walk," the ALJ failed to link this finding to Gallegos's specific symptom testimony that she feels "like the ground under [her] moves." (AR 21.)

In sum, for the foregoing reasons, this Court determines that the ALJ's adverse credibility determination is not supported by clear and convincing reasons supported by substantial evidence.

**The Error is Not Harmless**

Gallegos testified that she suffers headaches that lasted "six hours or so" either "once a week . . . or at least every ten days." (AR 55.) Based on testimony given by VE Rei, a finding that Gallegos would be unable to maintain competitive employment would be required if Gallegos's headache symptom testimony were fully credited. *See* AR 62, testimony by VE Rei that if an individual were to miss work 50% of the day, at least one day a week, "[i]t eliminates jobs."

This Court finds the ALJ's error in her credibility determination is harmful because this Court cannot confidently conclude that no reasonable ALJ, when fully crediting Gallegos's headache symptom testimony, could have reached a different disability determination. *See, e.g., Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (holding that a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination).

**Remand is Appropriate**

This Court has found that the ALJ has committed reversible error. Upon finding that an ALJ committed reversible error, the district court has the discretion to remand or reverse

- 20 -

and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014); *see also Garrison*, 759 F.3d at 1021. Gallegos seeks remand to the Commissioner and this Court finds that remand to the Commissioner for further proceedings is appropriate.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the district court **REVERSE** the decision of the ALJ and remand the matter to the Commissioner for further administrative proceedings. Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the District Court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **25-cv-00062-JGZ**.

Dated this 1st day of October, 2025.



James E. Marner
United States Magistrate Judge